```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__ 9/10/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

J.C., et al.,

                                            **Plaintiffs,**              15-CV-02161 (AJN)(SN)

                 -against-                            **REPORT AND
                                                                               RECOMMENDATION**

BJ's WHOLE SALE CLUB, INC.,

                                            **Defendant.**

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HON. ALISON J. NATHAN:**

      Before the Court are the letter and declaration of plaintiff Napoleon Contin and the affirmation of plaintiffs' attorney Jesse Barab on behalf of Contin's infant son, J.C., seeking approval of an infant settlement with defendant BJ's Wholesale Club, Inc. For the following reasons, I recommend that the proposed settlement be APPROVED without a hearing.

BACKGROUND

      This action stems from the injury of J.C. while on the defendant's premises. J.C. was born in 2002. On the evening of September 13, 2013, when he was 11 years old, J.C. slipped on a liquid on the floor of a BJ's Wholesale Club store in Bronx, New York, and fell, twisting his left ankle. (Barab Affirm. ¶ 4; id. Ex. 1 at 6, 12.) As a result of his injuries, he experienced a strain and sprain of his left ankle and knee, as well as muscular pain and weakness. (Id. ¶ 15.) Immediately after the fall, J.C. was taken to Lincoln Hospital, where he complained of left ankle pain. (Id. ¶ 5, Ex. 1 at 6.) He was initially treated with a cold compress and soft splint on his left ankle. (Id.) J.C. was diagnosed with a left ankle sprain and prescribed 400 milligrams of

ibuprofen every 6 hours, as needed. (Id. Ex. 1 at 7.) He underwent x-rays, which indicated that he did not experience any fractures. (Id. Ex. 1 at 19.)

Following the accident, J.C. began seeing Dr. Orsuville Cabatu, M.D., for physical therapy, initially prescribed for three days a week for four weeks, and regular check-ups. (See id. Ex. 2.) On October 3, 2013, J.C. complained of knee pain as well as ankle pain. (Id. Ex. 2 at 7.) An October 10, 2013 x-ray exam indicated no fractures. (Id. Ex. 2 at 9.) In October 2013, J.C. began physical therapy, which he continued, with a 17-day break in November 2013, until December 18, 2013, for a total of 16 sessions. (Id. Ex. 2 at 10-13.) J.C. saw Dr. Cabatu monthly from October to December 2013. On December 19, 2013, J.C. indicated that he was no longer experiencing any pain and was back to his full range of normal activities, including playing soccer and other sports. (Id. Ex. 2 at 5.) In the interim, J.C. missed gym activities at his school for those three months. (Contin Decl. ¶ 5.) J.C. saw Dr. Cabatu again on July 30, 2015, and complained only of on-and-off left knee and ankle pain with prolonged running, and no pain at the time of the visit. (Barab Affirm. Ex. 2 at 2.) Dr. Cabatu wrote that J.C. was allowed to be at the gym and that he had been switched to a home therapy program.

On July 23, 2015, counsel for the defense filed a letter advising the Court of a settlement and requesting an infant compromise hearing (ECF No. 35). That same day, the Hon. Alison J. Nathan referred this case to my docket for that specific non-dispositive motion (ECF No. 36). On July 27, 2015, I ordered the plaintiff to file the present affidavit and affirmation addressing whether such a hearing was necessary under the factors outlined in Bermudez ex rel. Castellanos v. Spagnoletti, 803 N.Y.S.2d 17 (Sup. Ct. Kings County 2005) (establishing factors for whether "good cause" exists to excuse a hearing under New York Civil Practice Law and Rule ("CPLR") 1208(d)). On August 10, 2015, the plaintiff filed those papers. On August 18,

2015, I ordered the plaintiff to re-redact the papers, which included some references to the infant plaintiff's full name and birthdate in contravention of Federal Rule of Civil Procedure 5.2 (ECF No. 40). On August 19, 2015, the plaintiff submitted the corrected versions of those papers, which were docketed on August 20, 2015 in place of the earlier versions.

On September 3, 2015, the Court issued an order (ECF No. 41) directing Barab to submit an addendum to his affidavit that included information sufficient for the Court to evaluate his claim for fees. On September 9, 2015, Barab filed an addendum to his affidavit (ECF No. 42). In that addendum, he noted that he was retained by Napoleon Contin on September 14, 2013. (Barab Supp. Affirm. ¶ 2.) In working on the case, Barab filed and served a summons and complaint, attended a preliminary hearing in state court, responded to discovery demands, engaged in motion practice, attended a settlement conference at defense counsel's office and prepared these affirmations. (Id. ¶ 3.) Barab works on a one-third contingency fee, but submits that, based on his 33 years of experience, a reasonable hour expense for his work would be $350 per hour. (Id. ¶ 4.) In his exhibits, Barab records 14 hours of work on this case (id. Ex. 1) and includes an itemized list of expenses totaling $416.19, plus a legal fee of $3,194.60, for a total request of $3,610.79. (id. Ex. 2).

## DISCUSSION

**I.     Standard of Law**

CPLR 1208 sets specific procedures for the approval of a settlement involving an infant's claim. The Court must consider an affidavit of the infant's representative which discusses (1) the representative's identity and relation to the infant; (2) the name, age and residence of the infant; (3) the circumstances that gave rise to the claim in question; (4) the nature and extent of the infant's injuries or damages; (5) the terms of the settlement; (6) the

facts surrounding the settlement; (7) whether other reimbursement has been received; and (8) whether the infant's representative or family members have also made claims, and if so, more information about those claims. CPLR 1208(a). The Court must also consider the affidavit of the infant's attorney, which must state: (1) the reason the attorney recommends the settlement; (2) that he is acting in the interests of the infant; and (3) what services he has rendered. CPLR 1208(b). Medical and hospital reports must also be included in settlements for personal injuries. CPLR 1208(c).

      CPLR 1208(d) requires that the moving party, the infant, and his attorney appear "before the court unless attendance is excused for good cause." The infant's appearance is "the long-time practice of the court[s]." Bittner v. Motor Vehicle Acc. Indemnification Corp., 257 N.Y.S.2d 521, 523 (Sup. Ct. 1965). "The appearance of the infant serves at least two purposes. First, an appearance may permit the Court to determine the extent of any injuries suffered. Second, appearance by the infants permits the Court to determine their position with respect to the settlement, which is a relevant consideration even given their minority." Southerland v. City of New York, 99 Civ. 3329 (CPS), 2006 WL 2224432, at *3 (E.D.N.Y. Aug. 2, 2006) (internal citations omitted).

      New York State courts have established the "good cause" standard for excusing the hearing as "consider[ing] whether the infant's appearance is necessary for a proper determination of settlement, and whether it would constitute a particular or unnecessary hardship if attendance is required." Linda J. v. Wharton, 594 N.Y.S.2d 971, 972 (Queens County Court 1992). The Bermudez case set out six factors for examining that same standard:

        1. The nature and extent of the injuries
        2. The permanency of the injuries
        3. The degree of recovery attested to by a physician
        4. The age of the infant

> 5. The amount of the settlement in relation to the injuries sustained [and]
>
> 6. The nature of the hardship involved in having the infant appear in court.

Bermudez, 803 N.Y.S.2d at 17. Federal courts also look to these standards in deciding whether such a hearing may be excused for "good cause." See Allen v. Robert's Am. Gourmet Food, Inc., 07 Civ. 2661 (NGG)(ETB), 2009 WL 2951980, at *9 (E.D.N.Y. Sept. 8, 2009) (citing Wharton and Bermudez); Estate of Doe v. New York City Dep't of Soc. Servs., 93 Civ. 8385 (JFK)(MHD), 1995 WL 619864, at *2 n.2 (S.D.N.Y. Oct. 23, 1995) (excusing a formal hearing and distinguishing the ultimate finding that a hearing was necessary in Wharton).

**II.     Application**

The documents submitted by the plaintiffs are sufficient establish that a hearing is unnecessary and that the settlement is reasonable and in the best interests of the infant plaintiff.

As explained above, the attorney affirmation and supplement set out all of the information required by CPLR 1208(b): why the settlement is proper; that Barab is acting in J.C.'s best interests; and what services he has rendered. (See Barab Affirm; Affirm Add.) The affidavit of J.C.'s father, Napoleon Contin, likewise meets the strictures of CPLR 1208(a), as he describes who J.C. is and where he lives; how they are related; the circumstances and extent of the injury, including any treatment; the terms of the settlement and how it was calculated; and he denies other claims or previous applications for relief. (See Contin Decl.) The record includes the medical reports required by CPLR 1208(c). All of this information also satisfies the requirements of "good cause" to excuse a hearing as outlined in Bermudez.

J.C.'s injuries were slight in nature; there were no fractures or permanent damage and no serious disabilities incurred. These injuries also healed quickly, with few lingering effects. Indeed, his physician has attested that he has been able to return to his regular course of

activities, including athletic ones. For these reasons, the proposed settlement sum is reasonable given the relatively slight injuries that J.C. sustained and his near-complete recovery. Although J.C. is now 13 years old – and therefore would be able to testify meaningfully at a hearing – appearance in Court would likely require him to miss school, which is undesirable. (Barab Affirm. ¶ 17.) In light of the nature of the claims, injuries and resolution, such disruption is unwarranted.

Under the proposal, the defendant's insurance carrier will pay the plaintiffs $10,000.00 to resolve the claim.[1] (Contin Decl. ¶ 8-10.) Of that money, $2,757.00 is owed for outstanding medical bills for the treatment stemming from the underlying incident and resultant injuries. In his affirmations, however, plaintiffs' counsel indicated that the medical providers have agreed to accept $2,000.00 in full satisfaction of all outstanding bills. (Barab Affirm. ¶ 8; Barab Supp. Affirm. ¶ 6.). Accordingly, the Court directs that the payment to the medical providers be capped at $2,000.00 and that the additional amount of $757.00 be provided to J.C. In addition, pursuant to his retainer agreement with the plaintiff, counsel would be entitled to $3,610.79, one-third of the total settlement sum less legal expenses.[2] Under this schedule, J.C. would be paid $4,389.21.

Because the infant plaintiff has made a full recovery from injuries that were not substantial and the amount of the settlement appears to be adequate to compensate him for such injuries, I find that the settlement is fair and reasonable, and the parties are excused from appearing at an infant compromise hearing before the Court.

---

[1] The New York City Department of Social Services has disclaimed any intention to assert a lien against the settlement sum. (See Barab Affirm. Ex. 3.)

[2] Plaintiff's counsel reports that he has worked approximately 14 hours on this case and spent $416.19 in expenses. Barab Supp. Affirm. at Ex. 1 & 2.) Thus, his hourly rate would be approximately $228 under this arrangement.

## CONCLUSION

For these reasons, I recommend that the settlement be APPROVED without a hearing, and that the defendant's insurance carrier be directed to pay the plaintiffs $10,000 to resolve the claim, distributed as follows: $4,389.21 to J.C.; $2,000.00 toward J.C.'s outstanding medical bills; and $3,610.79 to the payment of the legal fees and expenses of the plaintiffs' counsel.

\*     \*     \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Nathan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         September 10, 2015